# Exhibit B - NY State Complaint

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| TEVA PHARMACEUTICALS USA, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>PERRIGO, LLC,<br><br>        Defendant. | **SUMMONS**<br><br>Index Number:<br>Date Filed: January 31, 2023<br><br>The basis of venue is via written agreement pursuant to CPLR 501 |

TO THE ABOVE-NAMED DEFENDANT:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:   January 31, 2023
            New York, New York

STEVENS & LEE, P.C.
Attorneys for Plaintiff

/s/ *Bradley L. Mitchell*
By:   Bradley L. Mitchell, Esq.
       485 Madison Ave., 20th Floor
       New York, NY 10022
       (212) 319-8500
       bradley.mitchell@stevenslee.com

Joseph E. Wolfson
(*pro hac vice* application forthcoming)
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19102
(215) 751-1249
joseph.wolfson@stevenslee.com

Peter J. Adonizio, Jr.
(*pro hac vice* application forthcoming)
425 Biden Street, Suite 300
Scranton, PA 18503
(570) 969-5372
peter.adonizio@stevenslee.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TEVA PHARMACEUTICALS USA, INC.,

   Plaintiff,

v.

PERRIGO, LLC,

   Defendant.

Index Number:
Date Filed: January 31, 2023

The basis of venue is via written agreement pursuant to CPLR 501

## COMPLAINT

Plaintiff, Teva Pharmaceuticals USA, Inc. ("Teva"), by and through its undersigned counsel, complaining against Defendant, Perrigo, LLC ("Perrigo"), avers as follows.

### The Parties

1. Plaintiff Teva is a Delaware corporation with its principal place of business at 400 Interpace Parkway, Parsippany, New Jersey, 07054.

2. Defendant Perrigo is a Delaware limited liability company with a place of business at 515 Eastern Avenue, Allegan, Michigan, 49010.

### Jurisdiction and Venue

3. The Court has personal jurisdiction over Perrigo because the contract that is the subject of this action includes an exclusive jurisdiction and venue provision. Pursuant to that provision, the parties consented to the exclusive jurisdiction and venue in the state courts located in New York. The contract also specifies that it should be governed and construed in accordance with New York law.

**Preliminary Statement**

4. Teva brings this action for breaches of an agreement between Teva and Perrigo, pursuant to which Teva sold, and Perrigo purchased, generic, over-the-counter ("OTC") versions of Fexofenadine HCl pharmaceutical products ("Fexo").

5. On or about June 24, 2010, Perrigo, Teva, and a Teva affiliate, Teva Pharmaceutical Industries Limited ("TPI") executed a Binding Term Sheet (the "Agreement").

6. In accordance with Section 18 of the Agreement, on January 26, 2023, TPI assigned, and TUSA assumed, all of TPI's rights and obligations under the Agreement.

7. The Agreement provided for Teva to manufacture and sell Perrigo bulk Fexo product and for Perrigo to package the bulk product into finished Fexo product for marketing in the United States as an OTC product.

8. The parties explicitly agreed that Teva would charge, and Perrigo would pay, a purchase price based on Teva's Fully Absorbed Costs. In order to comply with the Agreement, Teva initially charged Perrigo a price based on Teva's estimated costs at the time of the shipment of Fexo because precise actual absorbed costs are indeterminable at the time of manufacture and supply. Teva's actual Fully Absorbed Costs could only be determined at a later time.

9. Accordingly, the pricing mechanism under the Agreement required Teva and Perrigo to participate in a periodic "true up" process whereby Teva would reimburse Perrigo for any payments made pursuant to initial pricing that was based on estimated costs which exceeded Teva's actual Fully Absorbed Costs, as later determined; and Perrigo, correspondingly, would compensate Teva if it paid prices based upon estimated costs that were later determined to be less than Teva's actual Fully Absorbed Costs.

10. Despite Teva reimbursing Perrigo when its actual Fully Absorbed Costs were less than the estimated costs used for the initial pricing between 2014 and 2016, Perrigo now refuses

2

to compensate Teva for true-up amounts from 2017–2019, when Perrigo paid initial pricing based on estimated costs that were less than Teva's actual Fully Absorbed Costs for that period.

11. By failing to—indeed, refusing to—pay the contractually agreed-to price for Fexo, Perrigo has clearly and willfully breached the Agreement.

12. Moreover, Perrigo has committed additional breaches of the Agreement by refusing to pay at all for certain Fexo batches ordered by Perrigo from Teva.

13. Pursuant to the Agreement, Perrigo issued to Teva various twelve-month rolling forecasts of its anticipated demand of Fexo along with binding purchase orders for Fexo.

14. In response to these forecasts and purchase orders, in accordance with its obligations under the Agreement, Teva obtained active pharmaceutical ingredients ("API") and other materials for use in the manufacture of Fexo, and for certain binding purchase orders, Teva actually manufactured batches of Fexo.

15. Nevertheless, on or about March 26, 2021, Perrigo cancelled certain binding purchase orders, and then on or about June 1, 2021, Perrigo unilaterally terminated the Agreement and purportedly "cancelled" all remaining binding purchase orders.

16. Despite the Agreement plainly obligating Perrigo to pay for binding purchase orders (i.e., those purchase orders issued by Perrigo and accepted by Teva) notwithstanding its unilateral cancellation of the purchase orders or its unilateral termination of the Agreement, Perrigo refuses to compensate Teva for:

  (a) Fexo batches manufactured by Teva for binding purchase orders not cancelled by Perrigo;

  (b) Materials for Fexo batches not manufactured by Teva for binding purchase orders not cancelled by Perrigo;

    (c) Materials for Fexo batches not manufactured by Teva for binding purchase orders purportedly cancelled by Perrigo; and

    (d) API and other materials Teva purchased to fulfill Perrigo's 2021 forecast.

17. Accordingly, Teva initiates this action and seeks damages to compensate Teva pursuant to the terms of the Agreement.

## Factual Background

### The Agreement and the True-Up Process

18. On or about June 24, 2010, Teva and Perrigo executed the Agreement providing for the purchase and sale of Fexo.

19. Under the Agreement, Teva was obligated to sell Fexo to Perrigo at the "Transfer Price," defined in the Agreement as Teva's "Fully Absorbed Costs (as defined above) plus [a specified percentage] of such Fully Absorbed Costs." [Agreement p. 29 (emphasis added)].

20. In turn, the Agreement defined "Fully Absorbed Costs," as "the actual direct material costs and labor costs as well as fixed and variable overhead costs (including shrinkage, scrap and salvage) incurred by either Teva or Perrigo that are required for the production, packaging and labeling of [Fexo], as determined in accordance with U.S. GAAP. For the avoidance of doubt, such costs shall not include any allocation or absorption of excess or idle capacity." [*Id.* p. 27 (emphasis added)].

21. Based on this agreed upon definition of Fully Absorbed Costs, it was impossible for Teva to calculate its Fully Absorbed Costs pursuant to Generally Accepted Accounting Principles ("GAAP") as utilized in the United States as of the time it shipped Fexo to Perrigo. By definition, Teva could not calculate its Fully Absorbed Costs in accordance with U.S. GAAP

4

until after the Fexo was manufactured, shipped, and properly accounted for utilizing the required absorption accounting principles.

22. Accordingly, to comply with its obligations under the Agreement, Teva was required to utilize estimated costs for pricing purposes at the time of shipment of Fexo and then was required to utilize GAAP principles to "true-up" its Fully Absorbed Costs. A true up mechanism was inherently included in the Agreement.

23. To the extent Teva's Fully Absorbed Costs for Fexo as later calculated (and thus, the actual Transfer Price) were less than the estimated costs in the estimated Transfer Price initially charged to Perrigo, Teva was obligated to—and in fact did—reimburse Perrigo for the difference. Failure to do so would have rendered Teva in breach of the Agreement for failure to charge Perrigo the Transfer Price based upon Teva's actual Fully Absorbed Costs.

24. Likewise, if Teva charged Perrigo an estimated Transfer Price with estimated costs that were less than Teva's Fully Absorbed Costs at the time of shipment, Perrigo would be obligated to compensate Teva for the amount undercharged as, by definition, Perrigo would not have paid to Teva the contractually agreed-to Transfer Price for the applicable shipments.

25. The terms and structure of the Agreement demonstrate that Teva and Perrigo each knew and understood that the true-up process would periodically occur during the course of the Agreement, and moreover, the parties acted upon this understanding during the course of performance under the Agreement.

26. For example, in March 2015, Teva and Perrigo began discussing changes to the estimated costs Teva would charge Perrigo in 2016, which represented an increase from charges from the period 2013 to 2015.

27. During these discussions, Teva and Perrigo discussed the impact of the increased costs and contemplated conducting a year-end true-up, if necessary.

28. Perrigo knew that the pricing Teva initially charged was based on estimated, not final costs.

29. In addition, and of particular importance, in or about May 2017, Teva and Perrigo engaged in a true-up process that resulted in Teva reimbursing Perrigo $1,043,903.00.

30. During this true-up process, Teva extensively discussed its true-up calculation with Perrigo.

31. Perrigo knew and understood that the true-up process was not simply a one-time occurrence as evidenced, in part, by its knowledge that Teva charged Perrigo estimated costs for shipments of Fexofenadine rather than the final Transfer Price based upon Fully Absorbed Costs as explicitly required by the Agreement.

32. For example, in or about May 2015, Mike Millard of Perrigo corresponded extensively with Teva representatives regarding true-ups and pricing increases for Fexofenadine for the period 2013–2015. In or about October 2015, Mr. Millard requested from Teva estimated costs for budgeting and true-up purposes, and Teva representatives explained that Perrigo "probably won't see [updated] costs next year mainly due to inventory however, as agreed, we will check actual costs mid-year and at the end of the year and make true ups if needed." Teva representatives clearly explained that, consistent with the Agreement and the parties' course of performance, Perrigo would continue to be invoiced based on estimated costs.

33. In or about February 2018, based upon the terms of the Agreement, the course of performance between the parties, and Teva's 2017 true-up payment to Perrigo, Teva notified Perrigo that it had completed another true-up calculation and that Teva's Fully Absorbed Costs

from 2017–2018 were higher than the estimated costs at the time of shipment resulting in a payment due to Teva.

34. However, despite the terms of the Agreement and the parties' course of performance under the Agreement, Perrigo refused to compensate Teva for the true-up amount—the difference between the price Perrigo paid based on estimated costs, and the actual Transfer Price based on Teva's actual Fully Absorbed Costs.

35. Perrigo took the untenable position that the terms of the Agreement did not obligate Perrigo to pay any amounts to Teva through a true-up process.

36. On or about June 19, 2019, after many communications about the true-up payment, Teva issued Perrigo an invoice (No. 100017454) in the amount of $3,806,620.00 based on Teva's true-up calculation of its Fully Absorbed Costs for 2017–2018. Perrigo has continuously refused to remit payment for this invoice to Teva.

37. In September 2020, Teva conducted another true-up calculation of its Fully Absorbed Costs for 2019 and discovered that it was owed an additional $2,377,305.00 from Perrigo.

38. Despite repeated discussions between the parties regarding these true-ups, including extensive documentation provided to Perrigo to support the true-up calculations, Perrigo continues to ignore its obligation to pay Teva a purchase price for Fexo based on Teva's actual Fully Absorbed Cost for 2017–2019.

**Perrigo Unilaterally Terminates the Agreement**

39. Despite Perrigo's failure to perform its obligations under the Agreement to compensate Teva for the difference between the estimated purchase price Perrigo paid and the

7

...

...

FILED: NEW YORK COUNTY CLERK 01/31/2023 05:13 PM
NYSCEF DOC. NO. 1

INDEX NO. 650601/2023
RECEIVED NYSCEF: 01/31/2023

Case 1:23-cv-01825-LGS   Document 1-2   Filed 03/02/23   Page 10 of 20

contractually agreed-to Transfer Price based on Teva's Fully Absorbed Costs, Teva continued to perform its obligations under the Agreement to supply Fexo to Perrigo.

40. Pursuant to the Agreement, since 2010, Perrigo had issued to Teva twelve-month rolling forecasts of Perrigo's monthly requirements of Fexo. These annual forecasts were necessary for Teva to acquire the proper amount of API and other materials needed to manufacture a sufficient quantity of Fexo to fulfill Perrigo's monthly requirements.

41. Similarly, pursuant to the Agreement, since 2010, Perrigo had issued to Teva numerous purchase orders for Fexo at least four months before the requested delivery date that specified the quantity of Fexo Perrigo was ordering.

42. The Agreement required Perrigo to purchase a minimum quantity of Fexo each month and plainly obligated Fexo to pay the Transfer Price for all Fexo product ordered pursuant to purchase orders.

43. Throughout the course of discussions between Teva and Perrigo about the true-up issues, up to and including during 2021, Perrigo continued to issue forecasts and purchase orders to Teva for Fexo, Teva continued to supply Perrigo with Fexo, and Teva continued to issue invoices to Perrigo for the purchased product.

44. On or about January 15, 2021, Perrigo issued to Teva a twelve-month forecast for its monthly requirements for 2021 of 55 batches of 60 mg Fexo and 111 batches of 180 mg Fexo.

45. Between January 20, 2021 and February 19, 2021, Perrigo issued to Teva purchase orders for 38 batches of 60 mg Fexo and 61 batches of 180 mg Fexo.

46. Prior to July 6, 2021, Teva manufactured 13 batches of 60 mg Fexo and 18 batches of 180 mg Fexo, and Teva issued corresponding invoices to Perrigo for these batches.

47. In various communications between Teva and Perrigo, Perrigo repeatedly assured Teva that it would continue to purchase Fexo from Teva through at least the end of 2021, in accordance with the forecast Perrigo issued to Teva.

48. In accordance with the Agreement, Teva purchased the requisite amount of API and other materials it needed to manufacture a sufficient quantity of Fexo to meet Perrigo's 2021 demand as reflected in the forecasts.

49. However, on or about March 26, 2021, Perrigo cancelled certain purchase orders it had issued and which had been accepted by Teva, and then on June 1, 2021, Perrigo decided to unilaterally terminate the Agreement and refused to accept further shipments of Fexo product.

50. On or about June 2, 2021, Ivo Guerra, Senior Director, Global Procurement, for Perrigo sent a letter to Andrea Guardia of Teva, by which Perrigo purported to notify Teva that it was terminating the Agreement effective June 1, 2021. Mr. Guerra's letter did not make any reference to the fact that Perrigo owed payment to Teva for either: (a) the true-up calculations, or (b) the outstanding balance owed to Teva for Fexo Teva manufactured prior to June 1, 2021.

51. Likewise, Mr. Guerra's letter made no mention of the outstanding purchase orders that Teva was in the process of fulfilling, leaving Teva to assume that Perrigo intended to cancel its outstanding purchase orders as part of Perrigo's decision to terminate the Agreement.

52. Further, Mr. Guerra's termination letter did not specify under which provision of the Agreement Perrigo was terminating the Agreement, nor which provision of the Agreement purportedly allowed Perrigo to unilaterally terminate the Agreement without proper, advanced notice to Teva.

53. Despite numerous requests by Teva that Perrigo make payments for (i) the true-up amounts, (ii) fulfilled and outstanding purchase orders, and (iii) the API and other materials Teva

9

obtained to meet Perrigo's forecasted demand, Perrigo has unjustifiably refused to make such payments.

## COUNT I
## BREACH OF CONTRACT – True-Up Process

54. Teva incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

55. It is undisputed that Teva and Perrigo executed a valid, binding, and written contract for the purchase and sale of Fexo.

56. Under the terms of the Agreement, Teva agreed to sell, and Perrigo agreed to purchase, Fexo at a defined Transfer Price based on Teva's actual Fully Absorbed Costs that could only be determined at a time following shipment and invoicing of Fexo to Perrigo.

57. The terms of the Agreement required Teva and Perrigo to conduct periodic "true ups" whereby: (a) Teva would reimburse Perrigo for any payments made by Perrigo that exceeded the actual Transfer Price based upon Teva's actual Fully Absorbed Costs for a given period; or (b) Perrigo would compensate Teva for the difference between its payments based on initial, estimated pricing, and the actual Transfer Price based upon Teva's actual Fully Absorbed Costs, should that amount exceed Perrigo's payments for a given period.

58. Teva has fully complied with all its obligations under the Agreement, including its duty to reimburse Perrigo when its true-up calculation of its Fully Absorbed Costs determined Perrigo had overpaid for Fexo in 2014–2016.

59. Perrigo, however, refuses to fulfill its obligation to compensate Teva for the $6,183,925.00 difference between its payments for Fexo from 2017–2019 and the actual Transfer Price based on Teva's actual Fully Absorbed Costs for that period.

60. Perrigo has plainly breached the Agreement by not paying the agreed upon purchase price for Fexo—the Transfer Price based on Teva's Fully Absorbed Costs.

61. As a direct, proximate, and foreseeable result of Perrigo's breach of the Agreement, Teva has been damaged in an amount exceeding $6,183,925.00

WHEREFORE, Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $6,183,925.00, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT II
### BREACH OF CONTRACT – Unpaid Purchase Orders and Forecasts

62. Teva incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

63. Teva and Perrigo executed a valid, binding, and written contract for the purchase and sale of Fexo.

64. Under the terms of the Agreement, Teva agreed to issue twelve-month rolling forecasts of its requirement of Fexofenadine, along with purchase orders for shipments of Fexo at least four months in advance of the requested delivery date.

65. Teva has fully complied with all its obligations under the Agreement, including its duties:

    (a) to obtain API and other materials to manufacture a sufficient quantity of Fexofenadine to meet Perrigo's forecasted demand and fulfill Perrigo's purchase orders;

    (b) to manufacture batches of Fexo in furtherance of fulfilling the purchase orders issued by Perrigo; and

(c) to ship to Perrigo batches of Fexo in continuing performance of its duty to fulfill the purchase orders issued by Perrigo.

66. Perrigo, however, has breached the Agreement by refusing to fully compensate Teva for:

    (a) Fexo batches manufactured by Teva for purchase orders issued and not cancelled by Perrigo, totaling a sum of $8,099,465.45;

    (b) Materials for Fexo batches not manufactured by Teva for purchase orders issued and not cancelled by Perrigo, totaling costs to Teva of $5,953,500.00;

    (c) Materials for Fexo batches not manufactured by Teva for purchase orders issued and purportedly cancelled by Perrigo, totaling costs to Teva of $3,817,012.50; and

    (d) API and other materials Teva purchased to fulfill Perrigo's 2021 forecast, totaling costs to Teva of $9,343,502.00.

67. As a direct, proximate, and foreseeable result of Perrigo's breach of the Agreement, Teva has been damaged in an amount exceeding $27,213,479.00.

WHEREFORE, Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $27,213,479.00, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT III
## UNJUST ENRICHMENT – True-Up Process

68. Teva incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

69. Teva asserts this Count III in the alternative to Count I for breach of contract.

70. Teva provided Fexo to Perrigo.

12

71. Perrigo benefited from the supply of Fexo.

72. Perrigo did not fully and completely compensate Teva for the Fexo, yet Perrigo retained the benefits of the Fexo.

73. It would be unjust and unconscionable for Perrigo to retain those benefits without fairly compensating Teva.

74. Teva has been damaged as a direct, proximate, and foreseeable result of Perrigo's failure to fully compensate Teva, while retaining all benefits for itself.

WHEREFORE, Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $6,183,925.00, pre- and post-judgment interest, and such other relief as the court deems appropriate.

## COUNT IV
### UNJUST ENRICHMENT – Fexo Manufactured Pursuant to Non-Cancelled Purchase Orders

75. Teva incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

76. Teva asserts this Count IV in the alternative to Count II for breach of contract.

77. In 2021, pursuant to purchase orders received from Perrigo, Teva manufactured 13 batches of 60 mg Fexo and 18 batches of 180 mg Fexo.

78. Perrigo benefited from the supply of Fexo.

79. Perrigo did not fully and completely compensate Teva for the Fexo, yet Perrigo retained the benefits of the Fexo.

80. It would be unjust and unconscionable for Perrigo to retain those benefits without fairly compensating Teva.

81. Teva has been damaged as a direct, proximate, and foreseeable result of Perrigo's failure to fully compensate Teva, while retaining all benefits for itself.

WHEREFORE, Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $8,099,465.45, pre- and post-judgment interest, and such other relief as the court deems appropriate.

## COUNT V
### PROMISSORY ESTOPPEL – True-Up Process

82. Teva incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

83. Teva asserts this Count V in the alternative to Count I for breach of contract.

84. Perrigo made multiple representations that it would participate in, and abide by, the true-up calculation process.

85. In reliance on these representations, Teva continued to provide Fexo to Perrigo.

86. In reliance on these representations, Teva reimbursed Perrigo when its Fully Absorbed Costs were less than the estimated costs used for pricing purposes from 2014–2016.

87. Teva relied on these representations to its detriment.

88. Teva's reliance on these representations was reasonable.

89. Notwithstanding its obligations to fully and completely compensate Teva for purchases of Fexo, Perrigo refuses to fully pay for the Fexo product it purchased.

90. As a direct, proximate, and foreseeable result of Perrigo's failure to fully compensate Teva under the circumstances set forth herein, Teva has been damaged.

WHEREFORE, Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of

14

$6,183,925.00, pre- and post-judgment interest, and such other relief as the Court deems appropriate.

## COUNT VI
### PROMISSORY ESTOPPEL – Purchase Orders and Forecasts

91. Teva incorporates by reference each of the foregoing paragraphs as though fully set forth at length herein.

92. Teva asserts this Count VI in the alternative to Count II for breach of contract.

93. Perrigo made multiple representations that it would participate in, and abide by, the terms of the Agreement.

94. Specifically, Perrigo represented that it would purchase Fexo from Teva in accordance with the twelve-month rolling forecasts and purchase orders it issued to Teva.

95. Perrigo repeatedly assured Teva it would continue to purchase Fexo in accordance with its forecast through the end of 2021.

96. In reliance on these representations, Teva purchased the necessary amount of API to manufacture Fexo to meet Perrigo's demands.

97. In reliance on these representations, Teva accepted Perrigo's purchase orders and manufactured Fexo to fulfill those purchase orders.

98. In reliance on these representations, Teva continued to supply Fexo to Perrigo.

99. Teva relied on these representations to its detriment.

100. Teva's reliance on these representations was reasonable.

101. Notwithstanding its obligations to fully and completely compensate Teva for Teva's performance under the Agreement, Perrigo has failed and refused to fully compensate Teva.

102. Perrigo refuses to make full payment to Teva.

103. As a direct, proximate, and foreseeable result of Perrigo's failure to fully compensate Teva under the circumstances set forth herein, Teva has been damaged.

WHEREFORE, Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant and enter an order awarding Plaintiff compensatory damages in excess of $19,114,014.50, pre- and post-judgment interest, and such other relief as the Court deems appropriate

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 31, 2023
New York, New York

STEVENS & LEE, P.C.
Attorneys for Plaintiff

/s/ *Bradley L. Mitchell*
Bradley L. Mitchell, Esq.
485 Madison Ave., 20th Floor
New York, NY 10022
(212) 319-8500
bradley.mitchell@stevenslee.com

Joseph E. Wolfson
(*pro hac vice* application forthcoming)
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19102
(215) 751-1249
joseph.wolfson@stevenslee.com

Peter J. Adonizio, Jr.
(*pro hac vice* application forthcoming)
425 Biden Street, Suite 300
Scranton, PA 18503
(570) 969-5372
peter.adonizio@stevenslee.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x
TEVA PHARMACEUTICALS USA, INC.

                              Plaintiff/Petitioner,

    - against -                                  Index No. 650601/2023

PERRIGO, LLC

                              Defendant/Respondent.
-----------------------------------------------------------------x

### NOTICE OF ELECTRONIC FILING
(Mandatory Case)
(Uniform Rule § 202.5-bb)

**You have received this Notice because:**

    1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.

<u>If</u> you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.

The **benefits of participating in e-filing** include:

    • serving and filing your documents electronically

    • free access to view and print your e-filed documents

    • limiting your number of trips to the courthouse

    • paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

    • visit: www.nycourts.gov/efile-unrepresented or
    • contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: 2/2/2023

Bradley L. Mitchell
Name
Stevens & Lee, P.C.

Firm Name

485 Madison Avenue, 20th Floor
Address

New York, NY 10022

(212) 319-8500
Phone

bradley.mitchell@stevenslee.com
E-Mail

To:   PERRIGO, LLC