# Arnold & Porter

**Carmela T. Romeo**
+1 212.836.7454 Direct
Carmela.Romeo@arnoldporter.com

May 5, 2023

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> In accordance with the Order issued April 27, 2023, Plaintiff shall file a letter in response by **May 12, 2023.** So Ordered.
>
> Dated: May 8, 2023
> New York, New York
>
> */s/ Lorna G. Schofield*
> **LORNA G. SCHOFIELD**
> **UNITED STATES DISTRICT JUDGE**

Re:   *Teva Pharmaceuticals USA, Inc. v. Perrigo, LLC*, et al., 1:23-cv-01825

Dear Judge Schofield:

We represent Defendants Perrigo, LLC and Perrigo Pharma International D.A.C. (together, "Perrigo") in the above-referenced action. Pursuant to ECF No. 26, we submit this pre-motion letter in support of Perrigo's partial motion to dismiss Teva Pharmaceuticals USA, Inc.'s ("Teva") Second Amended Complaint asserting claims relating to a contract between the parties (the "Term Sheet") for the sale of Fexofenadine HCl ("Fexo"). As explained in Perrigo's initial pre-motion letter (ECF No. 22), and as further discussed below, dismissal remains warranted under F.R.C.P. 12(b)(6) for most of Teva's claims.

### I.   Perrigo's Forecasts Were Non-Binding (Counts II, VI)

Teva seeks damages for breach of contract and unjust enrichment relating to "API and other materials Teva purchased to fulfill Perrigo's 2021 forecast." ECF No. 33 at ¶ 88(d). This claim should be dismissed because Perrigo's forecasts were non-binding. The Term Sheet unambiguously states: Perrigo "will provide [Teva] with ***non-binding*** twelve (12) month rolling forecasts of Perrigo's ***anticipated*** monthly requirements of the Product(s)[.]") Term Sheet, § 2(c) (emphasis added). Because the parties clearly stated their intentions for the forecasts to be non-binding, "their writing should…be enforced according to its terms." *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012).

To avoid dismissal, Teva conflates various contractual provisions in its amended allegations that the Term Sheet "obligated Perrigo to purchase a minimum quantity of Fexo each month, in accordance with its most recent forecast ("Minimum Purchase Quantity")." ECF No. 33 at ¶ 12. But nowhere in the Term Sheet is there an obligation for Perrigo to submit monthly purchase orders. Instead, the language Teva cites relates to purchase orders that Perrigo *chooses* to submit. Specifically, if Perrigo submitted a purchase order, that specific order could not be less than the "Minimum Purchase Quantity." Term Sheet, § 2(d). The "Minimum Purchase Quantity" is then defined for purposes of that subsection as 80% of the amount listed "in the forecast delivered by Perrigo during the calendar month immediately preceding the calendar month the purchase order(s) is(are) delivered." *Id.* In other words, if Perrigo issued a purchase order in a given month, the aggregate purchase amount needed to exceed 80% of the amount anticipated by the non-binding forecast issued the month prior; but the Term Sheet did not obligate Perrigo to issue a purchase order every month. If Perrigo did not issue a purchase order in a month, the forecast remained non-binding.

May 5, 2023
Page 2

## II.     Teva Cannot Recover "True-Up" Payments (Counts I, III, V)

Teva argues that, although it regularly invoiced Perrigo after product was shipped, the Term Sheet impliedly allowed Teva to issue subsequent, higher invoices as a "true-up" because it could not calculate its "Fully Absorbed Costs," a defined term, at the time of shipment. ECF No. 33 at ¶¶ 77, 79. The Term Sheet does not provide for such a process, nor does Teva cite a provision to the contrary. Indeed, Teva appears to concede this.

The Term Sheet provides that Teva would sell Fexo "at a purchase price equal to the Transfer Price," § 5(a), and that the Transfer Price means Teva's "Fully Absorbed Costs…plus five percent (5%) of such Fully Absorbed Costs." Term Sheet at Schedule 1. In turn, the definition of "Fully Absorbed Costs" states only that the actual costs required for the production, packaging and labeling of Fexo are to be determined pursuant to generally accepted accounting principles ("GAAP"). *Id*. Because the Term Sheet does not refer to a "true-up" or related process, the claim should be dismissed. *E.g.*, *Ashwood*, 99 A.D.3d at 7 ("in commercial contracts negotiated at arm's length by sophisticated, counseled businesspeople…courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include").

The parties knew how to—and did—provide for a "true-up" process when they wanted one: part of calculating "Net Sales," a separate amount based on Perrigo's own sales of Fexo, "may be estimated in accordance with U.S. GAAP, *provided that to the extent actually incurred or accrued, such accrual will be trued-up on a quarterly basis*." *See* Term Sheet at Schedule 1 (emphasis added). The parties did not include such language in the definition of "Fully Absorbed Costs." *See, e.g.*, *Matter of Trs. Established under the Pooling & Servicing Agreements relating to the Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certificates, Series 2007-C30*, 375 F.Supp.3d 441, 453 (S.D.N.Y. 2019) (where "experienced and sophisticated entities…included [a] parenthetical to modify [one phrase], but deliberately omitted the same parenthetical following [another phrase]," the "Court cannot find, given the plain language of the [contract], that they intended otherwise.") (citing *Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 560 (2014)). Teva's response to Perrigo's initial pre-motion letter was silent on this language.

Instead, Teva attempts to rewrite the contract through a course of performance argument, but that also fails. Teva's cited case, *Kamco Supply Corp. v. On the Right Track, LLC* supports that the single instance in which Teva alleges the parties engaged in a "true-up" is insufficient to establish course of performance. *See* 149 A.D.3d 275, 283-86 (2d Dep't 2017) (affirming denial of motion to set aside a judgment; in doing so, rejecting assertion that a party's choice to continue with the contract despite one failure to fulfill a minimum purchase requirement showed intent to prospectively waive such requirement for future purchases, and instead requiring "persistent and repeated failure" and "continued acceptance of such conduct without any reservation or protest"); *see also* NY U.C.C. § 2-208, cmt. 4 ("A single occasion of conduct does not fall within the language of this section.").

May 5, 2023
Page 3

Finally, Teva's 2017-18 "true-up" claims are time-barred. *See* NY U.C.C. § 2-725(1). Teva alleges that it first demanded payment "[i]n or about February 2018" and Perrigo "refused" to pay. *See* ECF No. 33 at ¶¶ 39-40. This is when the claim accrued. Teva filed suit (that it voluntarily dismissed and refiled) more than four years later, on January 27, 2023. Teva invokes the parties' tolling agreement, but even under that, Teva did not timely file: it first filed 46 days after mediation, then dismissed that complaint and re-filed 50 days after mediation; the agreement required suit within 45 days. Further, Teva concedes that tolling agreements are unenforceable when, like here, they do not contain a fixed termination date. *See* N.Y. Gen. Obl. § 17-103; *Allenby, LLC v. Credit Suisse, AG*, 47 Misc. 3d 1203(A), at *1-*2 (N.Y. Sup. Ct. Mar. 3, 2015), *aff'd*, 134 A.D.3d 577 (1st Dep't 2015). Teva's new allegations relating to negotiations of the tolling agreement among the parties' attorneys also do not save its claim as Teva does not allege that Perrigo engaged in conduct intended to mislead Teva. *Accord Allenby*, 47 Misc. 3d 1203(A) at *2.[1]

### III. Teva's Unjust Enrichment and Promissory Estoppel Claims Are Duplicative of the Contract Claims and Fail to State Claims (Counts III-VI)

Teva's unjust enrichment and promissory estoppel claims are improper because there is a valid, governing contract that covers the matters in dispute. *E.g.*, *Ohanian v. Apple Inc.*, 20 Civ. 5162 (LGS), 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) ("Unjust enrichment is proper only…where there is no traditional contract or tort claim."); *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F.Supp.2d 397, 415 (S.D.N.Y. 2011) ("[P]romissory estoppel generally applies only in the absence of a valid and enforceable contract."). Thus, Counts III-VI should be dismissed regardless of whether the contract claims survive.

Moreover, Teva fails to properly plead Counts IV and VI. Teva has not alleged how Perrigo benefitted from product that Teva does not allege was shipped to or accepted by Perrigo, or how Teva's reliance on the alleged representations concerning any non-binding forecasts was reasonable. *See Ohanian*, 2022 WL 826415, at *4; *Goldberg v. Pace Univ.*, 535 F.Supp.3d 180, 199-200 (S.D.N.Y. 2021).

\*   \*   \*

Perrigo proposes the following briefing schedule: (1) motion within 30 days after the pre-motion conference; (2) opposition within 21 days; and (3) reply within 21 days.

Respectfully submitted,

*/s/ Carmela Romeo*
Carmela T. Romeo

cc:   All counsel of record (via ECF)

---

[1] Teva cites *Bild v. Konig* in its initial letter response, but that case did not involve a tolling agreement and is thus inapplicable. No. 09CV5576ARRVVP, 2012 WL 13109964, at *4 (E.D.N.Y. Dec. 20, 2012).