UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
TEVA PHARMACEUTICALS USA, INC.,                              :
                                       Plaintiff,            :
                                                             :      23 Civ. 1825 (LGS)
                -against-                                    :
                                                             :      OPINION AND ORDER
                                                             :
PERRIGO, LLC and PERRIGO PHARMA                              :
INTERNATIONAL D.A.C.,                                        :
                                       Defendants.           :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Teva Pharmaceuticals USA, Inc. filed the Second Amended Complaint (the "SAC") on May 2, 2023. The SAC asserts claims for breach of contract, unjust enrichment and promissory estoppel against Defendants Perrigo, LLC and Perrigo Pharma International D.A.C.[1] Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss Counts I, III, IV, V and VI in their entirety, and Count II in part. For the reasons below, the motion is granted in part and denied in part.

**I.  BACKGROUND**

The following facts are taken from the SAC, documents incorporated by reference in it, exhibits thereto and documents of which the Court may take judicial notice. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).[2] They are assumed to be true for purposes of this motion. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 104 (2d Cir. 2021).

---

[1] On or about March 20, 2020, Defendant Perrigo, LLC assigned all of its rights and obligations under the Agreement to Defendant Perrigo Pharma International D.A.C. For simplicity, this opinion uses "Defendants" to refer to either or both entities, before or after that date.
[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

On or about June 24, 2010, Defendants, Plaintiff and Plaintiff's affiliate executed a Binding Term Sheet (the "Agreement"). The Agreement provided for Plaintiff to manufacture and sell pharmaceutical products to Defendants in bulk and for Defendants to package the bulk product for sale in the United States. The Agreement states that Defendants would purchase products at a price equal to Plaintiff's Fully Absorbed Costs ("Costs"), plus five percent (the "Transfer Price"). The Agreement defines Costs as the "actual direct material costs and labor costs . . . incurred by either [party] . . . as determined in accordance with U.S. GAAP." Plaintiff manufactured and sold Fexofenadine HCl ("Fexo") to Defendants under the Agreement until 2021.

Between 2014 and 2016, Plaintiff's actual Costs were less than the estimated Transfer Prices invoiced to and paid by Defendants. In March 2015, the parties began negotiations for a year-end true-up. In October 2015, an agent for Defendants requested estimated costs for true-up purposes and Defendants' budgeting, and stated that Defendants would "make true[-]ups if needed." (emphasis omitted). In May 2017, Plaintiff reimbursed Defendants $1.04 million.

From 2017 to 2018, Plaintiff's Costs exceeded the Transfer Prices invoiced to and paid by Defendants. Defendants refuse to satisfy Plaintiff's requests for true-up compensation for that disparity. On or about June 1, 2021, Defendants unilaterally terminated the Agreement, cancelled all remaining purchase orders and refused to purchase the minimum quantity allegedly required by the Agreement for the remainder of 2021.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider

conclusory allegations or legal conclusions couched as factual allegations. *See Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019).

    **B.**    **Applicable Law**

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151-52 (2d Cir. 2013); *accord Clayton Servs. LLC v. Sun W. Mortg. Co., Inc.*, No. 22 Civ. 511, 2023 WL 2781294, at *4 (2d Cir. Apr. 5, 2023) (summary order). New York law governs this dispute because the Agreement includes a New York choice of law provision, and the parties' submissions assume that New York law applies. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law. . . .").

**III.     DISCUSSION**

      **A.     Breach of Contract for Failure to True-Up (Count I)**

Count I of the SAC alleges that Defendants breached the Agreement by failing to fulfill their obligation to make true-up payments for the period of 2017 to 2019.  Specifically, Defendants failed to compensate Plaintiff for the difference between Defendants' payments based on initial estimated pricing, and the actual agreed-upon Transfer Price based on Plaintiff's Costs, allegedly in violation of the parties' agreement.  Defendants' motion to dismiss Count I of the SAC is denied because the SAC pleads facts sufficient to show that the parties, through their course of dealing, modified their agreement to include true-up payments, despite the restriction on modifications in their written contract.

          1.  **Waiver and Modification**

New York's Uniform Commercial Code ("UCC") provides the governing law because the Agreement involves a "transaction in goods."  *See* N.Y. U.C.C. §§ 2-102 (Article 2 of the UCC applies to "transactions in goods"); 2-105(1) ("goods" includes "all things . . . which are movable."); *accord Jet Experts, LLC v. Asian Pac. Aviation Ltd.*, 602 F. Supp. 3d 636, 640 (S.D.N.Y. 2022) (concluding that New York's UCC governs because the agreement involves a "transaction in goods," which includes all things "which are movable").  Common law principles supplement the UCC to the extent not inconsistent with its terms. N.Y. U.C.C. § 1-103(3)(b); *see Antifun Ltd. T/A Premium Vape v. Wayne Indus. LLC*, 616 F. Supp. 3d 291, 302 (S.D.N.Y. 2022) (New York law).

"Once a contract is formed, the parties may of course change their agreement by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel.  In order to determine the terms of such change, courts look to UCC 2-208 and 2-209 . . . ." *Reliable*

*Automatic Sprinkler Co. Inc. v. Sunbelt Grp. L.P.*, 472 F. Supp. 3d 64, 75 (S.D.N.Y. 2020) (quoting *CT Chems. (U.S.A.), Inc. v. Vinmar Impex, Inc.*, 613 N.E.2d 159, 162 (N.Y. 1993)). "A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded . . . ." N.Y. U.C.C. § 2-209(2); *accord Gramercy Holdings I, LLC v. Matec S.R.L.*, No. 20 Civ. 3937, 2023 WL 5917624, at *43 n.39 (S.D.N.Y. Sept. 11, 2023) (New York law). Nevertheless, an attempt at modification that is insufficient "can operate as a waiver." N.Y. U.C.C. § 2-209(4). This provision "is intended . . . to prevent contractual provisions excluding modification except by a signed writing from limiting in other respects the legal effect of the parties' actual later conduct." *Id*. cmt. 4. The parties' "course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance." N.Y. U.C.C. § 2-208(3).

"Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned. Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage. However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006). "[A] party that continues to . . . accept performance despite the failure of a condition precedent established for its benefit may be said -- provided that such party's intent is clearly expressed -- either to have *elected* to affirm the contract despite the failure of the condition, or to have *waived* the satisfaction of the condition." *Kamco Supply Corp. v. On the Right Track, LLC*, 49 N.Y.S.3d 721, 728 (2d Dep't 2017) (emphasis in original); *accord Gramercy Holdings*, 2023 WL 5917624, at *43.

5

Written provisions restricting alterations may themselves be waived. *Todd Eng. Enterprises LLC v. Hudson Home Grp., LLC*, 171 N.Y.S.3d 474, 477 (1st Dep't 2022); *PC COM, Inc. v. Proteon, Inc.*, 946 F. Supp. 1125, 1131 (S.D.N.Y. 1996) (New York law) (A no modification except in writing "clause itself may be waived, but courts should be slow to find waiver of anti-waiver provisions."); *see also* N.Y. U.C.C. § 2-209 cmt. 4 (quoted supra).

Although the Agreement restricts modifications to signed writings, the SAC pleads facts sufficient to show that Defendants waived that clause and affirmed a modification of the Agreement to include a true-up mechanism. The SAC alleges that in October 2015, an agent for Defendants requested estimated costs from Plaintiff for true-up purposes and stated that Defendants would "make true[-]ups if needed." (emphasis omitted). The SAC alleges that Defendants did not object to Plaintiff's consistent practice of issuing invoices for estimated prices calculated from estimated costs. It also alleges that Defendants engaged in years'-long true-up discussions after which Defendants accepted a $1.04 million true-up reimbursement. The SAC alleges that "[Defendants] knew and understood that the true-up process was not simply a one-time occurrence . . . ."

If proven, these allegations can establish that Defendants waived the signed writing requirement for modifications to the Agreement. The Agreement did not explicitly contain a true-up mechanism for goods sold, but Defendants' conduct as alleged manifested their intention to engage in a true-up process. Defendants did not require a signed writing to modify the payment terms. By accepting a true-up payment, Defendants may "have elected to affirm the contract despite the failure of the condition, or to have waived the satisfaction of the condition." *Kamco Supply Corp*, 49 N.Y.S.3d at 728.

Defendants argue that the Agreement was not modified because there was only one true-up payment, and a single occasion of conduct does not fall within the course of performance such that it modifies a contract. *See* N.Y. U.C.C. §§ 2-208 cmt. 4, 2-209. However, the 2017 true-up process was not a single occasion of conduct. As described above, the SAC alleges a years-long process during which Defendants never objected to the use of estimated payments in invoices and accepted over $1 million when the true-up was in Defendants' favor.

The SAC therefore pleads facts sufficient to establish that the Agreement requires a true-up process.

### 2. The Claim is Not Time-Barred

The "statute of limitations is an affirmative defense for which the defendant bears the burden of proof." *Browe v. CTC Corp.*, 15 F.4th 175, 190 (2d Cir. 2021). Dismissal is appropriate only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).

The SAC sufficiently alleges a timely claim for Defendants' non-payment of the amount Plaintiff invoiced Defendants in June 2019. "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." N.Y. U.C.C. § 2-725(1). "A cause of action accrues when the breach occurs . . . ." N.Y. U.C.C. § 2-725(2); *accord Talebi v. Gas Turbine Controls Corp.*, 740 F. App'x 755, 756 (2d Cir. 2018) (summary order) (New York law). To establish breach of contract for failure to pay, a plaintiff must show sale, delivery and acceptance of the good at an established price and non-payment for that good. *See Sunbeam Corp. v. Morris Distrib. Co.*, 389 N.Y.S.2d 173, 174 (3d Dep't 1976) ("[T]he material constitute elements of the actions for goods sold and delivered" are "the purchase, sale and delivery of

goods at an established price and nonpayment therefor. . . ."); *accord Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 507 (S.D.N.Y. 2022) (citing N.Y. U.C.C. Law § 2-607).

The SAC alleges that in February 2018, "[Plaintiff] notified [Defendants] that it had completed another true-up calculation and that [Plaintiff]'s Fully Absorbed Costs from 2017-2018 were higher than the estimated costs at the time of shipment resulting in a payment due to [Plaintiff]"; that Defendants refused to pay, claiming they had no obligation to do so; that on June 19, 2019, Plaintiff issued Defendants an invoice for $3,806,620.00 based on Plaintiff's true-up calculation; that Defendants have continuously refused to pay; that in September 2020, Plaintiff calculated that it was owed an additional $2,377,305.00; and that despite repeated discussions, Defendants still refuse to pay.

The SAC sufficiently alleges at least a timely claim for failure to pay the June 2019 invoice. Based on the allegations in the SAC, the instant action is not time barred because it was commenced in state court on January 31, 2023, less than four years after the June 2019 invoice date. The motion to dismiss Count I of the SAC is denied.

### B. Breach of Contract: Forecasts (Count II)

Count II of the SAC alleges that Defendants breached the Agreement by failing to pay the amount required in 2021, based on a January 2021 forecast, and for failing to pay for binding purchase orders it purportedly cancelled. Defendants' motion to dismiss the forecasts claim is granted in part -- to the extent it seeks payment for any allegedly required minimum purchase

after February 2021.  The motion is denied as it relates to the minimum purchase in the February 2021 purchase order.[3]

Under New York law, "[d]etermining whether a contract is ambiguous is an issue of law for the courts to decide."  *Donohue v. Cuomo*, 184 N.E.3d 860, 867 (N.Y. 2022).  "Contractual claims unambiguously barred by an agreement between the parties may be determined on a motion to dismiss."  *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 122 (2d Cir. 2022).  In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use.  *See Slatt v. Slatt*, 477 N.E.2d 1099, 1100 (N.Y. 1985); *accord Hilt Constr. & Mgmt. Corp. v. Permanent Mission of Chad to United Nations in N.Y.*, 860 F. App'x 764, 767 (2d Cir. 2021) (summary order) (New York law).

Section 2(c) of the Agreement states that "on or prior to the first business day of each calendar month thereafter until expiration or earlier termination of the [Agreement] . . . , [Defendants] will provide [Plaintiff] with non-binding twelve (12) month rolling forecasts of [Defendants'] anticipated monthly requirements of [Fexo] covering the twelve (12) calendar month period beginning on the day such forecast is provided by [Defendants] to [Plaintiff] . . . ."  Although the twelve-month forecasts are "non-binding," Section 2(d) of the Agreement requires Defendants to submit such a forecast each month and to purchase at least "eighty percent (80%) (the '<u>Minimum Purchase Quantity</u>') of the aggregate quantity of [Fexo] reflected . . . in the

---

[3] It appears that Count II seeks damages in connection with the Agreement's alleged minimum purchase obligation based on forecasts, and separately for purchase orders Defendants had issued and Plaintiff had accepted.  *See* Dkt. No. 33, ¶¶ 55, 59, 85.  The motion to dismiss challenges only Defendants' obligation in connection with the forecasts, but does not address cancelled purchase orders.  This opinion does not address Count II except in connection with the forecasts and minimum purchase obligation.

forecast delivered by [Defendants] during the calendar month immediately preceding the calendar month the purchase order(s) is(are) delivered." The Agreement states that the Defendants are required to pay for the Minimum Purchase Quantity "[i]n the event that [Defendants] order[] less than the Minimum Purchase Quantity."

The SAC alleges that Defendants submitted a forecast in January 2021 and a purchase order in February 2021. Apparently, Defendants did not issue subsequent forecasts or purchase orders. To the extent Count II seeks damages based on the Agreement's minimum purchase requirement, that requirement is only a monthly requirement. Defendants were required to pay for 80% of the February forecast contained in the January twelve-month forecast. Because there were no forecasts after January, no minimum purchase quantity for purposes of Section 2(d) can be calculated or is due after February 2021. (The SAC does not assert a claim for failure to make forecasts, nor is it clear whether such a claim would be viable.)

Count II therefore states a plausible claim as it relates to the February 2021 purchase orders and the minimum purchase requirement for that month, as well as any prior months for which there were forecasts. Count II is dismissed to the extent it asserts that Defendants are bound by a minimum purchase requirement after February 2021 or for any month for which there was no forecast the preceding month.

        **C.**    **Unjust Enrichment (Count III, IV); Promissory Estoppel (Count V, VI)**

Defendants' motion to dismiss the unjust enrichment and promissory estoppel claims in the SAC is granted. Counts III, IV, V and VI are dismissed because the parties agree that there was a valid contract. Plaintiff agrees that its alternatively pleaded claims should be dismissed.

IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Counts III, IV, V and VI are dismissed. Count II is dismissed in part. For clarity, the surviving claims are Count I (Breach of Contract – True-Up Process) and Count II (Breach of Contract – Unpaid Purchase Orders and Forecasts), but only for any amount due in connection with the Defendants' February 2021 purchase order and for any cancelled purchase orders not addressed by the motion.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 41.

Dated: February 2, 2024
        New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE